UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GEORGES PAYANO                                    CIVIL ACTION

V.                                                NO. 17-6425

ENVIRONMENTAL, SAFETY & HEALTH                    SECTION "F"
CONSULTING SERVICES, INC., ET AL.


## ORDER AND REASONS

Before the Court is the defendant's motion for summary judgment that: (1) the plaintiff is covered under the Longshore and Harbor Workers' Compensation Act and thus only eligible to recover under that Act and (2) the defendant is not liable for vessel negligence under § 905(b) of the LHWCA. For the following reasons, the motion is DENIED in part, as to the plaintiff's coverage under the LHWCA, and GRANTED in part, as to the defendant's liability for vessel negligence under § 905(b). In addition, the plaintiff's claims for unseaworthiness, maintenance and cure, and Jones Act negligence are DISMISSED with prejudice, in light of the plaintiff's binding stipulation that he does not have these claims. The plaintiff's status as a longshoreman or a land-based worker, as well as his claim for negligence under the general maritime law, remain before the Court.

**Background**

This maritime lawsuit arises out of a technician's claim that he sustained a tear of his right bicep while attempting to retrieve an oil boom from the water while aboard a vessel.

Georges Payano is a 61-year-old resident alien from the Dominican Republic. He does not speak or read English and has very limited formal education. In April of 2016, Environmental, Safety, & Health Services, Inc. hired Mr. Payano to work as a technician. Prior to the day of his accident, Mr. Payano had performed land-based cleaning work in a warehouse located in Louisiana and had never before performed cleanup work aboard a vessel "at sea."

On the morning of July 6, 2016, Mr. Payano and four other ES&H employees, including his brother (Pascual Fermin) and an ES&H supervisor (Jack Scruggs), boarded the M/V SAINT and were transported to Breton Sound 32 to conduct oil spill cleanup work. The SAINT, which was owned by NOLA Boat Rentals, LLC and operated by Brent Trauth, an employee of NOLA, was time chartered by ES&H pursuant to a Master Service Agreement and corresponding Work Authorization Form with Deep Delta Airboats, LLC.[1]

---

[1] Deep Delta owns and operates air boats, while NOLA, its affiliate, owns and operates deck boats. In September of 2012, ES&H and Deep Delta executed a Master Service Agreement, under which Deep Delta agreed to provide ES&H with airboat services, as well as deck boat services through its affiliate and subcontractor, NOLA. On July 6, 2016, Deep Delta, through NOLA, provided a deck boat, the SAINT,

On that day, the ES&H crew was instructed to retrieve damaged sections of a containment boom from the water and load it onto the vessel.[2] The technicians performed this job manually under the supervision and direction of Jack Scruggs, and with the assistance of the SAINT. The Work Authorization Form entered between ES&H and Deep Delta provided that "ES&H supervisory personnel on site shall instruct Subcontractor personnel on their specific duties and responsibilities." As such, Mr. Scruggs allegedly instructed Mr. Trauth, the captain of the SAINT, as to when, where, and how to move the vessel during the boom retrieval process. Otherwise, Mr. Trauth had no involvement with the boom retrieval activity and remained in the cabin for most of the workday.

Upon arriving at the worksite, Mr. Scruggs instructed Mr. Payano and his brother to lie down on the vessel's bow and reach into the water to grasp and pull the damaged segments of containment boom while the boom was still anchored to the sea floor. When Mr. Payano and his brother attempted to communicate to Mr. Scruggs that the containment boom was too heavy and difficult to retrieve manually, Scruggs allegedly yelled and ordered that they continue to retrieve and lift the damaged boom

---

and captain, Brent Trauth, to ES&H, pursuant to the Master Service Agreement and a corresponding Work Authorization Form.
[2] Mr. Payano alleges that he had never previously retrieved oil boom from a vessel. He further submits that no other ES&H crew member spoke Spanish, except for his brother, who exclusively spoke Spanish.

onto the vessel. As Mr. Payano was grasping a segment of the still-anchored boom, the bow of the vessel jerked upwards due to wave action, and he sustained a tear of his right bicep.[3]

Mr. Payano experienced immediate pain and swelling; he reported the injury to Mr. Scruggs and was transported to receive emergency medical care. Mr. Payano's initial orthopedic surgeon performed an exploratory surgery but decided not to repair the bicep tear. After an unsuccessful course of physical therapy, Mr. Payano sought a second opinion from another orthopedic surgeon, who determined that he was in need of a right bicep arthroscopy/debridement and sub-pectoral bicep tenodesis. As such, this surgeon submitted a 1010 form under the Louisiana Workers' Compensation Act to request authorization for the surgery. This request was denied by ES&H's insurance carrier. Mr. Payano did, however, receive compensation benefits under the Longshore and Harbor Workers' Compensation Act while recuperating from his injury until he was cleared to return to work.

Upon returning to work, Mr. Payano was placed on light duty status, for which he was allegedly harassed by his supervisors. He submits that he ultimately resigned because of this harassment.

---

[3] Captain Maurice Ryan, the plaintiff's liability expert, has opined that Mr. Payano's injuries "were caused because the oil boom retrieval operation was not conducted in accordance with [ES&H's] standard operating procedure."

On July 1, 2017, Mr. Payano sued Environmental, Safety & Health Services, Inc.; ES&H, Inc. d/b/a ES&H Consulting & Training Group; and ES&H of Dallas, LLC, alleging claims under the Jones Act, the LHWCA, and the general maritime law. In particular, his complaint states that he was employed by defendants as a seaman and/or laborer working on board a vessel in the navigable waters of Louisiana and that his injuries[4] were caused by the negligence of the defendants as follows:

a. Failing to properly operate the vessel;
b. Failing to properly train and/or supervise its employees;
c. Failing to warn Plaintiff of the vessel and its movement;
d. Failing to maintain a proper lookout;
e. Failing to maintain the vessel and its appurtenances;
f. Failing to do what they should have done to have prevented the incident;
g. Failing to provide a seaworthy vessel;
h. Failing to provide adequate and safe gear, equipment, and appurtenances on the vessel;
i. Failing to comply with applicable rules and regulations promulgated by OSHA, the United States Coast Guard, and/or other governmental and/or quasigovernmental agencies;
j. Failing to provide Plaintiff with a safe place to work;
k. Failing to provide Plaintiff with reasonable working conditions;
l. Failing to do what they should have done; and

---

[4] Mr. Payano alleges in his complaint that he suffered "serious physical and mental injuries, including but not limited to, traumatic tear of his right bicep and other injuries to his upper and lower extremities, body, and mental psyche."

      **m.**    All other acts of negligence and fault
             that may be identified during discovery
             and proven at trial.

Moreover, he alleges damages for physical pain and suffering, mental suffering, lost wages, scarring and disfigurement, disability, medical expenses, maintenance and cure, workers' compensation benefits, and/or compensation benefits under the Longshore and Harbor Workers' Compensation Act.

On October 13, 2017, all of the plaintiff's claims against ES&H, Inc. d/b/a ES&H Consulting & Training Group and ES&H of Dallas, LLC were dismissed without prejudice. On that same day, the plaintiff filed his first amended complaint, naming as additional defendants Deep Delta Airboats, LLC (the owner of the vessel on which he was allegedly injured) and Brent Trauth (the operator of that vessel). Then, on December 11, 2017, the plaintiff again amended his complaint, substituting NOLA Boat Rentals, LLC as the vessel owner and dismissing Deep Delta without prejudice.

On April 21, 2018, the plaintiff moved to dismiss his claims against NOLA and Trauth with prejudice. In addition, on May 2, 2018, the plaintiff stipulated that he: (1) was not a seaman at the time of the incident, (2) does not have a Jones Act negligence claim, (3) does not have an unseaworthiness claim under the general maritime law, and (4) does not have a general maritime law maintenance and cure claim.

Now, Environmental, Safety, & Health Consulting Services, Inc.; ES&H, Inc. d/b/a ES&H Consulting & Training Group; and ES&H of Dallas, LLC (collectively "ES&H") move for summary judgment. Specifically, ES&H contends that it is entitled to judgment as a matter of law that: (1) the plaintiff is covered under the LHWCA such that his recovery is limited to compensation benefits from ES&H and a possible vessel negligence claim under § 905(b) of that Act and (2) ES&H is not liable for vessel negligence under § 905(b).[5]

---

[5] On September 18, 2018, the plaintiff was granted leave to file a supplemental memorandum in opposition to ES&H's motion for summary judgment. In this paper, the plaintiff states that, after he filed his initial opposition on August 14, 2018, ES&H produced over 450 pages of additional documents. In particular, the plaintiff relates that, on August 15, 2018, ES&H produced the following documents: (a) ES&H "Standard Operating Procedure" for deployment and retrieval of containment boom; (b) various training certificates for Mr. Payano; (c) tailgate safety meeting records for various jobs Mr. Payano appears to have worked at ES&H; and (d) a complete copy of ES&H's Safety and Health Policy Manual. In light of this untimely production, plaintiff's counsel withdraws its allegation that ES&H did not provide Mr. Payano with HAZWOPER training. However, he maintains his contention that the work Mr. Payano was ordered to perform at the time of his injury directly contravened ES&H's "standard operating procedure" for oil boom retrieval.

Then, on September 26, 2018, the plaintiff was granted leave to file a second supplemental memorandum in opposition to this motion. In this paper, the plaintiff relates that ES&H produced 60 additional pages of documents, which reveal that "Mr. Payano appears to have worked a sufficient amount of time on or adjacent to navigable waters to satisfy the requisites for coverage under the Longshore and Harbor Workers Compensation Act. Mr. Payano, therefore, stipulates that he is deemed a longshoreman for purposes of his claim against ES&H."

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See <u>Matsushita Elec. Indus. Co. v. Zenith Radio.</u>, 475 U.S. 574, 586 (1986). A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. <u>See</u> <u>id</u>. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. <u>Id</u>. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. <u>See</u> <u>Donaghey v. Ocean Drilling & Exploration Co.</u>, 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. <u>Id</u>. Hearsay evidence and unsworn documents that

cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2). "[T]he nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)(internal quotation marks and citation omitted). In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. Scott v. Harris, 550 U.S. 372, 378 (2007). Although the Court must "resolve factual controversies in favor of the nonmoving party," it must do so "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Antoine v. First Student, Inc., 713 F.3d 824, 830 (5th Cir. 2013)(internal quotation marks and citation omitted).

## II.

ES&H first seeks summary judgment that the plaintiff is covered under the Longshore and Harbor Workers' Compensation Act and thus only eligible to receive compensation payments from ES&H and potentially assert a vessel negligence claim under § 905(b) of that Act.

A.

Coverage under the Jones Act and the Longshore and Harbor Workers' Compensation Act is mutually exclusive. The Jones Act permits recovery for "[a]ny seaman who shall suffer personal injury in the course of his employment," whereas the LHWCA governs the recovery of a maritime worker who is not a master or "a member of a crew of any vessel." See <u>Buras v. Commercial Testing & Engineering Co.</u>, 736 F.2d 307, 309 (5th Cir. 1984).

To be eligible for coverage under the LHWCA, a worker must meet both a situs and a status test. See <u>Bienvenu v. Texaco, Inc.</u>, 164 F.3d 901 (5th Cir. 1999). The situs test focuses upon where the injury occurs; it requires that the worker be injured on navigable waters of the United States. <u>Id.</u> at 904. On the other hand, the status test focuses upon where the employee works. <u>Id.</u> at 908. "A worker injured in the course of his employment on navigable waters is engaged in maritime employment and meets the status test only if his presence on the water at the time of injury was neither transient [n]or fortuitous." <u>Id.</u> Although the Fifth Circuit in <u>Bienvenu</u> declined to create a bright-line rule regarding the "exact amount of work performance on navigable waters" required to satisfy the status test, it instructed that "[t]he threshold amount must be greater than a modicum of activity in order to preclude coverage to those employees who are merely commuting from shore to work by boat." <u>Id.</u> Ultimately, the <u>Bienvenu</u> court

determined that a worker who spent 8.3% of his total working time aboard a vessel on navigable waters satisfied the status test because this was "not an insubstantial amount of [his] working time." Id.

Once an injured worker meets the situs and status tests for coverage, the LHWCA provides him with two exclusive remedies: (1) compensation benefits from his employer under § 904; and (2) recovery for vessel negligence under § 905(b). 33 U.S.C. §§ 904, 905(b).

On the other hand, when an injured worker is covered by the Louisiana Workers' Compensation Act (LWCA), rather than the LHWCA, the exclusive remedy provision of the LWCA does not preclude him from asserting against his employer a negligence claim under the general maritime law. See Green v. Vermillion Corp., 144 F.3d 332, 339 (5th Cir. 1998); Givens v. ES&H, 2012 WL 3780547, *7–8 (E.D. La. Aug. 31 2012).

### B.

In this case, ES&H contends that because the plaintiff was injured on navigable waters and in the course of his employment with ES&H, he satisfies the situs and status elements of the LHWCA. And because he qualifies as a covered worker under the LHWCA, his remedy is limited to compensation payments from ES&H, and a potential § 905(b) action against the vessel owner.

The plaintiff counters that ES&H improperly conflates the situs and status elements of the LHWCA. He correctly notes that the Fifth Circuit has clarified in <u>Bienvenu v. Texaco, Inc.</u> that "a worker injured in the course of his employment on navigable waters is engaged in maritime employment and meets the status test only if his presence on the water at the time of injury was neither transient [n]or fortuitous." 164 F.3d 901, 908 (5th Cir. 1999). The plaintiff further submits that he was employed as a technician, worked inside of an ES&H warehouse, and had never worked on a vessel until the day of his injury.[6] Because he was an exclusively "land-based employee" who was injured while fortuitously working on navigable waters, the plaintiff avers that he is covered by the Louisiana Workers' Compensation Act, rather than the Longshore and Harbor Workers' Compensation Act.

---

[6] To support his contention that he had never before worked on a vessel for ES&H, Mr. Payano points to his own deposition testimony:

> **A.** It was only that day that I work on the boat, on those boats. It was the first time.
>
> **Q.** So that was the only time during the job where you injured your right arm that you were working on the boat?
>
> **A.** On that job site, it was also the first time, my first time.
>
> **Q.** On the boat, working on the boat?
>
> **A.** And that same work too.

However, in his second supplemental memorandum in opposition to the defendant's motion for summary judgment, the plaintiff changes his position. He notes that ES&H recently produced 60 additional pages of documents, which reveal Mr. Payano had worked on or adjacent to navigable waters before the day of his injury. Specifically, he relates:

> Mr. Payano appears to have worked a sufficient amount of time on or adjacent to navigable waters to satisfy the requisites for coverage under the Longshore and Harbor Workers Compensation Act. Mr. Payano, therefore, stipulates that he is deemed a longshoreman for purposes of his claim against ES&H.

Although Mr. Payano has attempted to stipulate in his supplemental opposition papers that he is a longshoreman and is covered under the LHWCA, this informal, unilateral stipulation is not binding. Moreover, the plaintiff's position is not supported by competent evidence contained within the summary judgment record. Because a factual dispute remains as to whether Mr. Payano's presence on navigable waters was more than fortuitous at the time of his injury, summary judgment in favor of ES&H that the plaintiff is covered under the LHWCA and only eligible to recover under that Act is inappropriate.[7]

---

[7] In light of the Court's determination that ES&H is not entitled to judgment as a matter of law that Mr. Payano is only eligible to recover under the LHWCA, it likewise is not entitled to judgment as a matter of law that Mr. Payano has no claim for negligence under the general maritime law against ES&H. If it determined that Mr. Payano is *not* covered by the LHWCA, he has standing to

On the other hand, Mr. Payano did enter a binding stipulation on May 2, 2018 that he was not a seaman at the time of the incident and does not have claims for unseaworthiness, maintenance and cure, or Jones Act negligence.  And so, summary judgment in favor of ES&H is appropriate as to the plaintiff's unseaworthiness, maintenance and cure, and Jones Act negligence claims.

III.

ES&H next seeks summary judgment that it is not liable for vessel negligence under § 905(b) of the Longshore and Harbor Workers' Compensation Act.

A.

Section 905(b) of the LHWCA vests a covered worker injured by the negligence of a vessel with the right to bring an action against the vessel.  33 U.S.C. § 905(b).  Pursuant to the Act, the term "vessel" includes the "vessel's owner, owner pro hac vice, agent, operator, charterer or bare boat charterer, master, officer, or crew member."  33 U.S.C. § 902(21).  Given this definition, ES&H, as the time charterer of the SAINT, can be subject to liability under § 905(b).  See Hudson v. Schlumberger Tech. Corp., 452 Fed. Appx. 528, 536 (5th Cir. 2011).  Moreover, it is possible for a longshoreman's employer to act in a dual

_____

bring a negligence claim under the general maritime law against ES&H.  See Green v. Vermillion Corp., 144 F.3d 332, 339 (5th Cir. 1998); Givens v. ES&H, 2012 WL 3780547, *7-8 (E.D. La. Aug. 31 2012).

capacity as a "vessel." When the employer acts in this dual capacity, "the entity retains its immunity for acts taken in its capacity as an employer, but may still be sued 'qua vessel' for acts of vessel negligence." Levene v. Pintail Enters., Inc., 943 F.2d 528, 531 (5th Cir. 1991). Accordingly, that ES&H is Mr. Payano's employer does not preclude him from asserting a § 905(b) action against it in its capacity as time charterer. Nonetheless, the Fifth Circuit has emphasized that "[t]he difference between the capacities in which an employer may act is extremely important." Id.

The scope of vessel negligence for a vessel owner under § 905(b) is limited to the breach of specific duties described by the U.S. Supreme Court in Scindia Steam Navigation Co., Ltd. v. De Los Santos, 451 U.S. 156 (1981). Courts have construed Scindia to provide three general duties that vessels owe to longshoremen: "(1) the 'turnover duty,' relating to the condition of the ship upon the commencement of stevedoring operations; (2) the duty to prevent injuries to longshoremen in areas remaining under the 'active control' of the vessel; and (3) the 'duty to intervene.'" Moore v. M/V ANGELA, 353 F.3d 376, 380 (5th Cir. 2003)(citing Howlett v. Birkdale Shipping Co., 512 U.S. 92, 98 (1994)). Once the vessel has been turned over to the longshoremen's employer, the vessel owner has no general duty to supervise or inspect the operations; instead, the vessel owner may rely on the employer to

fulfill its statutory duty under 33 U.S.C. § 941 to provide a reasonably safe work environment for the longshoremen. _Scindia_, 451 U.S. at 168-69. That means "the shipowner is not liable to the longshoremen for injuries caused by dangers unknown to the owner and about which he had no duty to inform himself." _Id._ at 172. Thus, once the vessel owner turns over the ship to the longshoremen's employer, only the duty to control and the duty to intervene apply. _Id._ at 167, 175. Under the active control duty, "a shipowner must exercise reasonable care to prevent injuries to longshoremen in areas that remain under the active control of the vessel." _Howlett_, 512 U.S. at 98. The duty to intervene is triggered when a vessel owner has actual knowledge of a hazard and that the employer, in the exercise of "obviously improvident" judgment, intends to continue operations despite the hazard. _Pimental v. LTD Canadian Pac. Bul_, 965 F.2d 13, 15 (5th Cir. 1992). In other words, if a hazard develops during the longshoring operations and "if the shipowner should anticipate that the stevedore will not or cannot correct the danger and that the longshoremen cannot avoid it, then the shipowner's duty is triggered to take steps, reasonable in the circumstances, to eliminate or neutralize the hazard." _Scindia_, 451 U.S. at 175.

The scope of vessel negligence for a time charterer under § 905(b) is even more limited than that for a vessel owner. _See_ _Hudson_, 452 Fed. Appx. at 536. The traditional control duties of

the time charterer extend merely to directing the commercial activity of the vessel and determining the ship's routes, the timing of the mission, and the designation of the cargo. Kerr-McGee, 830 F.2d 1332, 1339 (5th Cir. 1987). Accordingly, the Fifth Circuit has held that "a time-charterer is not liable under 905(b) unless the cause of the harm is within the charterer's traditional sphere of control and responsibility or has been transferred thereto by the clear language of the charter agreement." Id. at 1343. In addition, this Court has noted that the traditional allocation of responsibility may be altered by "custom." See Hebert v. Specialized Envtl. Res. LLC, No. 12-0071, 2013 U.S. Dist. LEXIS 41403, at *7 (E.D. La. Mar. 25, 2013) (Feldman, J.) ("In sum, a time charterer can be liable for an accident that . . . resulted from a decision within the time charterer's control spheres or if the time charterer and vessel owner altered the traditional allocation of responsibility by custom or contract.").

## B.

In this case, it is undisputed that ES&H did not own the vessel on which the plaintiff's alleged injury occurred.[8] However, the parties disagree as to whether ES&H is liable under § 905(b) in its capacity as time charterer of the vessel. ES&H contends

---

[8] In responding to ES&H's statement of uncontested facts, the plaintiff admits that "[t]he Saint was owned by NOLA Boat Rentals, LLC ("NOLA"), and captained/operated by Brent Trauth ("Trauth"), a member and employee of NOLA."

that there is "no allegation or evidence demonstrating that ES&H owed and/or breached a duty by an act taken *in its capacity as time charterer*." ES&H also emphasizes that the plaintiff concedes in his Second Amended Complaint that "[a]t all material times herein, the vessel was owned, operated, and/or controlled by Defendants, NOLA Boat Rentals, LLC and/or Brent Trauth." The plaintiff counters that ES&H assumed operational control of the vessel as a matter of contract and fact, and that his injury arose out of ES&H's active negligence in exercising operational control of the vessel.

To support his contention that ES&H altered the traditional roles of control with the vessel owner by "contract," the plaintiff points to language in the "Work Authorization Form" entered between ES&H and Deep Delta. In particular, this Form provides:

> ES&H supervisory personnel on site shall instruct Subcontractor personnel on their specific duties and responsibilities.

According to Mr. Payano, this contractual provision indicates that ES&H "maintain[ed] control over all meaningful aspects of vessel operations and movement involved in the boom retrieval process." Moreover, the plaintiff alleges that as a matter of "fact," ES&H supervisor, Jack Scruggs, controlled all aspects of vessel

movement, operation, and boom retrieval activities at issue.[9] Mr. Payano further submits that because Scruggs instructed him to manually retrieve the anchored boom (instead of directing the vessel operator to release the anchored boom with the vessel's power), ES&H (through Scruggs) violated the Scindia "active control duty." And by failing to instruct him to stop the manual boom retrieval process, despite observing his struggles, Scruggs violated the Scindia "duty to intervene." The plaintiff maintains that Scruggs' actions, and failure to act, caused his bicep injury. To further support his contention that ES&H's negligence caused his injury, Mr. Payano points to the report of Captain Maurice

---

[9] In support of his contention that ES&H exercised operational control over the vessel, the plaintiff relies on his own affidavit in which he attests:

> The vessel operator did not participate in the boom retrieval work, but I did observe Mr. Scruggs give directions to the pilot regarding movement of the boat during our work.

In addition, the plaintiff points to the deposition testimony of Brett Trauth, the operator of the SAINT, in which he explains how ES&H personnel instructed him to move the vessel during the boom retrieval process:

> The only thing they would need to do is if I have to pull forward, backwards, or stop. That[] would be the three signals I would get.

The plaintiff also points to Mr. Trauth's testimony regarding how Scruggs directed the ES&H crew members during the boom retrieval process:

> He'd tell them what to do, what the process he wants done.

Ryan, his liability expert, who opines that the plaintiff's injuries "were caused because the oil boom retrieval operation was not conducted in accordance with [ES&H's] standard operating procedure."

Although the plaintiff points to evidence in the summary judgment record indicating that ES&H may have been negligent, there is no evidence in the summary judgment factual record to support a finding that these alleged acts of negligence occurred in ES&H's capacity as time charterer, rather than as employer. First, the language in the Work Authorization Form cited by the plaintiff does not alter the traditional allocation of responsibility between the time charterer and vessel owner. Although this provision permitted ES&H personnel to "instruct" the vessel's crew regarding their duties during the boom retrieval process, the "clear language" of the contract does not transfer to ES&H operational or navigational control of the vessel. See Kerr-McGee, 830 F.2d at 1343. Moreover, the testimony of Brent Trauth, upon which plaintiff relies, does not establish that ES&H exercised operational or navigational control of the vessel, or that Trauth relinquished control of the vessel with respect to the boom retrieval operations. Rather, this testimony reveals that Scruggs was the ES&H supervisor on board and that Trauth did not participate personally in the boom retrieval operations. Finally, the plaintiff does not allege that ES&H breached a duty owed within

its traditional role of time charterer, such as directing the commercial activity of the vessel or determining the ship's routes, the timing of the mission, or the designation of the cargo. See Kerr-McGee, 830 F.2d at 1339.

Ultimately, that ES&H allegedly failed to comply with its standard operating procedure for boom retrieval operations while aboard a vessel does not translate into vessel negligence. In other words, all of the alleged acts of negligence that the plaintiff raises -- from instructing the plaintiff to manually retrieve the oil boom, to failing to instruct him to stop despite his difficulties -- "must be classified as potential acts of employer negligence, not vessel negligence." See Levene, 943 F.2d at 535. Because the plaintiff has failed to raise a genuine issue of material fact regarding ES&H's negligence in its capacity as time charterer, summary judgment in favor of ES&H is appropriate as to the plaintiff's vessel negligence claim under § 905(b).

Accordingly, it is ORDERED: that the motion is DENIED in part, as to the plaintiff's coverage under the Longshore and Harbor Workers' Compensation Act, and GRANTED in part, as to the defendant's liability for vessel negligence under § 905(b) of that Act. It is FURTHERED ORDERED: that the plaintiff's claims for unseaworthiness, maintenance and cure, and Jones Act negligence are DISMISSED with prejudice, in light of the plaintiff's binding stipulation that he that does not have these claims. The

plaintiff's status as a longshoreman or a land-based worker, as well as his claim for negligence under the general maritime law, remain before the Court.

New Orleans, Louisiana, October 2, 2018

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE